# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLORADO

Civil Action No. _____

ANN C. HOAK,

                                 Plaintiff,

v.

UNITED SPECIALTY INSURANCE
COMPANY,

                                 Defendant.

---

# CLASS ACTION COMPLAINT

---

       Plaintiff Ann C. Hoak ("Hoak" or "Plaintiff") brings this action on behalf of herself and all other similarly situated persons against Defendant United Specialty Insurance Company ("USIC"). Plaintiff makes the following allegations pursuant to the investigation of her counsel, and based upon information and belief, except as to the allegations specifically pertaining to her, which are based on personal knowledge.

## I.    NATURE OF ACTION

       1.     This is a class action for breach of contract to recover amounts for the loss of use of ski passes insured by Defendant. Plaintiff's claims are supported by the written provisions of her policy, which are materially the same as those of other policies held by the members of the proposed class.

       2.     Plaintiff's ski pass insurance policy covers the cost of the ski pass against the risk of not being able to use the ski pass due to a covered peril. Defendant promised to reimburse

Plaintiff for the cost of her ski pass minus the applicable daily rate or pro-rata reduction for each day that Plaintiff used her ski pass during the 2019/2020 ski season.

3.    Despite unambiguous language in the policy, which is a fully integrated insurance agreement, Defendant breached the policy by failing to pay Plaintiff when she was unable to use her ski pass because of the COVID-19 pandemic.

4.    Defendant has caused material harm to Plaintiff and the proposed class by improperly failing to make payment.

5.    On behalf of herself and a class of similarly situated persons, Plaintiff seeks to recover compensatory, as well as declaratory and injunctive relief.

## II.    PARTIES

6.    Plaintiff Ann C. Hoak is a resident of the City of Vail in Eagle County, Colorado.

7.    Defendant USIC is a property casualty insurance company incorporated under the laws of the State of Delaware with its principal place of business in the State of Texas at 1900 L Don Dodson Drive, Bedford, Texas 76021.

## III.    JURISDICTION AND VENUE

8.    Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d)(2), because this is a class action in which at least one member of the class is a citizen of a state different from Defendant, the amount in controversy exceeds $5 million exclusive of interest and costs, and the proposed class contains more than 100 members.

9.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 and Local Rule 3.2(b)(1) in that Defendant resides in this judicial district and division and a substantial portion of the events giving rise to Plaintiff's causes of action occurred in this judicial district and division.

## IV.   FACTUAL BACKGROUND

### The Epic Pass and Ski Pass Insurance

10.     Defendant USIC provides season ski pass insurance coverage whereby it promises its insureds coverage against loss of use of the insured's season ski pass.

11.     Vail Corporation d/b/a Vail Resorts Management Company ("Vail Resorts") operates more than 33 ski resorts throughout the United States. Vail Resorts Management sells "Epic Passes" promising access to skiing and snowboarding at its resorts. To visit these mountain resorts, consumers can purchase Epic Passes as: (1) annual passes for prices ranging from $319 to $979; (2) weekly passes from $391 to $766; or (3) day or multi-day passes from $67 to $766.

12.     To induce consumers to purchase Epic Passes well in advance of the ski season, and to mitigate the risk that consumers may be unable to realize the full use of their Epic Pass for reasons beyond their control, Vail Resorts offers pass insurance to its customers through USIC.

13.     Upon information and belief, Vail Resorts sold hundreds of thousands of Epic Passes for the 2019/2020 ski season.

14.     Upon information and belief, thousands of consumers purchased pass insurance through USIC.

15.     The website for Epic Pass identifies pricing for pass insurance as follows, based on the type of Epic Pass purchased:

| Pass Type | Adult/Teen | Child |
|---|---|---|
| Epic Pass | $32 | $22 |
| Military Epic Pass – Active/Retired | $17 | N/A |
| Military Epic Pass – Active/Retired Dependent | $17 | $12 |
| Military Epic Pass – Veteran | $27 | N/A |

| | | |
|---|---|---|
| Military Epic Pass – Veteran dependent | $27 | $17 |
| Epic Local Pass | $27 | $17 |
| Epic Day Pass | $27 | $17 |
| Summit Value Pass | $27 | $17 |
| Keystone Plus Pass | $17 | $12 |
| Park City Youth Pass | $17 | $12 |
| Tahoe Local Pass | $27 | $17 |
| Tahoe Value Pass | $17 | $12 |
| Kirkwood Pass | $27 | $17 |
| Afton Alps Pass | $17 | $17 |
| Mt. Brighton Pass | $17 | $12 |
| Wilmot Pass | $17 | $12 |

**Plaintiff's Purchase of Ski Pass Insurance**

16.    Plaintiff purchased from Vail Resorts the Epic Pass providing Plaintiff with unlimited and unrestricted access to the mountain resorts owned and/or operated by Vail Resorts for the 2019/2020 ski season, and she purchased ski pass insurance from Defendant. A true and accurate copy of the Certificate of Season Ski Pass Insurance ("Certificate") is attached hereto as Exhibit A and is incorporated herein by reference.

17.    The entire contract between Plaintiff and Defendant consists of the Certificate and the policy referred to as MASTER POLICY NUMBER: EYHBDISP0317 ("Policy").

18.    Plaintiff is the owner of the Policy, which was in force at the time of the alleged loss.

19.    Defendant is the effective and liable insurer of the Policy, and policies meeting the class definition (the "Class Policies").

20.     The terms of the Policy and Class Policies are not subject to individual negotiation and are materially the same for all policy owners.

**Terms of the Policy**

21.     The Policy offers the following coverage:

**PROPERTY INSURED AND COVERAGE LIMITS**: We cover the Season Ski Pass Cost you paid. We cover you against the risk of not being able to use your Season Ski Pass due to a covered peril. We will reimburse you for the Season Ski Pass Cost minus the applicable Daily Rate or Pro-Rata reduction (for the Epic Day Pass) for each day (or portion thereof) that you have used your Season Ski Pass during the Ski/Snowboard Season.

22.     The Policy defines "Season Ski Pass" as follows:

**SEASON SKI PASS** – means any lift ticket access pass for multiple day usage throughout the duration of the Ski/Snowboard Season.

23.     The Policy defines the "Ski/Snowboard Season" as follows:

**SKI/SNOWBOARD SEASON** – the period starting on October 15, 2019 and ending on April 15, 2020.

24.     The Policy defines "Season Ski Pass Cost" as follows:

**SEASON SKI PASS COST** – Means the purchase price of the Season Ski Pass.

25.     The Policy defines the "Daily Rate" as follows:

**DAILY RATE** – means $95 per day for an adult pass (age 13 and up) at all Destination Resorts except; $50 per day at Stevens Pass, Okemo, Stowe and Sunapee; $35 per day at Afton Alps, Mt. Brighton and Wilmot Mtn. **DAILY RATE** for a child pass (age 12 and under) is $35 per day at all Destination Resorts except $15 per day at Afton Alps, Mt. Brighton and Wilmot Mtn. The DAILY RATE does not apply to Epic Day Pass. Usage reduction for Epic Day pass will be pro-rated for each usage day and if all days have been used there is no refund.

26.     The Policy defined the "Covered Peril" as follows:

**PERILS INSURED AGAINST**: Subject to the Exclusions and Coverage Limits, the Insured has coverage against Loss of use of your Season Ski Pass if caused by any one of the following unforeseen perils ***occurring after the effective date of coverage:***

…

> e) you are subpoenaed, required to serve on a jury, hijacked, **quarantined** or your travel visa is denied; (emphasis added)

27.     The term "quarantined" is not expressly defined within the Policy but is commonly understood to mean: "to detain in or exclude by quarantine," "to isolate from normal relations," "a restraint upon the activities or communication of persons…designed to prevent the spread of disease…," "to exclude, detain, or isolate for political, social, or hygienic reasons," and "a system of measures maintained by governmental authority at ports, frontiers, etc., for preventing the spread of disease." *See Merriam-Webster Dictionary; Dictionary.com.*

28.     The Policy defines Loss as follows:

> **LOSS** – means your inability to use your Season Ski Pass due to an unforeseen event, occurrence or circumstance.

29.     The Policy contains no applicable exclusions for viruses, pandemics, related government orders or actions taken by Vail Resorts, independently or pursuant to such government orders.

**Plaintiff's Purchase of Ski Pass Insurance**

30.     On September 3, 2019, Plaintiff purchased a season Epic Pass for $939 providing her with unlimited access to the Mountain Resorts owned by Vail Resorts.

31.     On September 3, 2019, Plaintiff purchased the Policy from USIC for $32.

32.     As of March 14, 2020, Plaintiff had skied 3 days: February 14, 2020, February 21, 2020, and March 1, 2020.

**Plaintiff's Loss**

33.     On March 15, 2020, Vail Resorts announced it was closing all its mountain resorts in response to the COVID-19 pandemic.

34.     As a result of the closure, Plaintiff was restrained from entering upon and using the facilities of any of the Vail Resort properties and deprived of the use of her Season Epic Pass.

35.     Eagle County, Colorado, where Plaintiff resides, the Governor of Colorado and the President of the United States all issued various orders, limiting human contact and restricting travel and activities to only those considered essential.

36.     Skiing and snowboarding are considered non-essential activities.

37.     Upon information and belief, all the jurisdictions in which the 33 properties owned and/or operated by Vail Resorts were subject to some form of government order related to the COVID-19 pandemic which precluded Plaintiff from using her Season Epic Pass.

38.     Plaintiff is entitled to receive from Defendant payment of the cost of her ski pass ($939) less the applicable daily rate ($95 per day) for each day (3 days) that she used her Season Epic Pass during the Ski/Snowboarding Season. Therefore, Plaintiff is entitled to compensation in the amount of $654 ($939 - $285 = $654).

39.     On April 7, 2020, Plaintiff gave prompt notice and provided the requested information to USIC through its authorized representative as identified in the Policy: American Claims Management ("ACM").

40.     Any documentation requested was provided to ACM within 90 days after the Covered Loss occurred.

41.     By letter dated April 10, 2020, ACM acknowledged receipt of Plaintiff's claim ("Acknowledgement Letter"), a copy of which is attached hereto as Exhibit B.

42.     In a separate letter, also dated April 10, 2020 ("Coverage Position"), attached as Exhibit C, ACM stated that it had "carefully reviewed the insurance policy referenced above as well as the factual basis of the presented claim" but was not making payment or recommending payment because it was still determining whether coverage exists.

43. The Coverage Position further asserted as follows:

    (a) In review, the concern of contracting the virus may not be covered under peril (a) because it is not considered **Sickness**, as defined by the policy, unless your physician certifies you actually contracted the disease. The policy may not provide you reimbursement for governmental authority(s) recommendation or to avoid, or bars travel, and/or "hold in place".

    (b) Anxiety, depression, psychological disorders, etc., experienced due to concerns of the virus, travel restrictions imposed, causing the inability to use your pass could disqualify any reimbursement pursuant to **exclusion (d).**

    (c) Further, Vail's decision to close their resorts due to the concern of COVID-19 may not be covered under peril (d) since the reason of the closure is not a **Natural Disaster** as that term is defined by the policy.

    (d) In regard to peril (i), in the event a student's school closed early and the student returned home for on-line classes, it is possible no coverage exists for that cause of losing the ability to use the ski/snowboard season pass.

44. The Coverage Position concluded by stating the Defendant's position as follows:

    At this time, a final coverage determination has not been made whether pass holders with insurance will receive a reimbursement.

45. The Denial Letter failed to address and ignored altogether peril (e) which expressly provided coverage if the insured was "quarantined".

46. Plaintiff's claim for her Loss under the Policy remains unsatisfied.

47. Plaintiff and other purchasers of USIC's pass insurance have made timely claim for payment of the benefits due under their policies, but USIC has failed to make payment without just cause or excuse.

## V.    CLASS ACTION ALLEGATIONS

48. Pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(1), 23(b)(2), 23(b)(3) and/or 23(c)(4), Plaintiff brings this action on behalf of herself and all others similarly situated, and seeks to represent the following class:

49.     All persons who purchased an Epic Pass for the 2019/2020 ski season and purchased from Defendant pass insurance on their Epic Pass, the terms of which provide or provided against loss of use of the insured's season ski pass.

50.     Excluded from the class is Defendant, any entity in which Defendant has a controlling interest, any of the officers, directors, or employees of the Defendant, the legal representatives, heirs, successors, and assigns of the Defendant, anyone employed with Plaintiff's counsels' firms, any Judge to whom this case is assigned, and his or her immediate family.

51.     Plaintiff's claims satisfy the numerosity, typicality, adequacy, commonality and superiority requirements under Federal Rule of Civil Procedure 23, as set forth more fully herein.

52.     The persons who fall within the class number in at least the hundreds and most likely thousands, and thus the numerosity standard is satisfied. Because class members are geographically dispersed across the country, joinder of all class members in a single action is impracticable.

53.     Class members are readily ascertainable from information and records in Defendant's possession, custody, or control. Notice of this action can readily be provided to the class.

54.     There are questions of law and fact common to the claims of Plaintiff and the class that predominate over any questions affecting only individual class members. The questions of law and fact arising from Defendant's actions that are common to the class include, without limitation:

      a.  Whether the order and directive from the CEO for Vail Resorts closing all 33 resorts in the United States constituted a quarantine under the terms of the Policy because it was "an unforeseen event, occurrence, or circumstance" that restrained class

        members from entering upon and using the facilities of Destination Resorts for the purposes permitted by the Epic Pass;

    b.   Whether governmental orders applicable to class members were an "unforeseen event, occurrence, or circumstance" that constituted a quarantine by restraining class members from traveling to Destination Resorts, engaging in activities, and using the Epic Pass for its intended purpose;

    a.   Whether Defendant breached the terms of the Class Policies;

    b.   Whether the class sustained damages as a result of Defendant's breaches of contract;

    c.   Whether the class is entitled to damages, restitution, and/or other equitable relief; and

    d.   Whether the class, or a subset of the class, is entitled to declaratory relief stating the proper construction and/or interpretation of the Class Policies.

55.    The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the claims asserted herein.

56.    Plaintiff's claims are typical of the claims of the class in that Plaintiff and the class members all purchased ski pass insurance policies containing the same or similar terms including, in particular, what constitutes a Covered Peril.

57.    Plaintiff will fairly and adequately protect and represent the interests of the proposed class, because her interests are aligned with, and not antagonistic to, those of the proposed class, and she is represented by counsel who are experienced and competent in the

prosecution of class action litigation, and have particular expertise with class action litigation on behalf of purchasers of insurance policies.

58.     Maintenance of this action as a class action is a fair and efficient method for adjudicating this controversy. It would be impracticable and undesirable for each member of the class to bring a separate action. Because of the relatively small size of individual class members' claims, absent a class action, most class members would likely find the cost of litigating their claims prohibitively high and would have no effective remedy. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all class members.

## COUNT I: BREACH OF CONTRACT

59.     The preceding paragraphs are incorporated by reference as if fully alleged herein.

60.     Plaintiff and the class purchased ski pass insurance from Defendant.

61.     The Policy and Class Policies are valid and enforceable contracts between the Defendant and Plaintiff and class members.

62.     Plaintiff and the class members substantially performed their obligations under the terms of the Policy and Class Policies.

63.     Plaintiff and the class members suffered a Loss from a Covered Peril.

64.     Defendant has failed to compensated Plaintiff and class members for their respective Losses as required by the Policy.

65.     As a direct and proximate result of Defendant's breaches, Plaintiff and the class have sustained damages that are continuing in nature in an amount to be determined at trial.

## COUNT II: DECLARATORY AND INJUNCTIVE RELIEF

66.     The preceding paragraphs are incorporated by reference as if fully alleged herein.

67.     An actual controversy has arisen and now exists between Plaintiff and the class, on the one hand, and Defendant, on the other, concerning the respective rights and duties of the parties under the Policy and Class Policies.

68.     Plaintiff contends that Defendant has breached the Policy and Class Policies by failing to timely pay Class Members for their respective Losses by reimbursing each member of the class for the Season Ski Pass Cost minus the applicable Daily Rate or Pro-Rata reduction (for the Epic Day Pass) for each day (or portion thereof) that the member has used his/her Season Ski Pass during the Ski/Snowboard Season.

69.     Plaintiff, therefore, seeks a declaration of the parties' respective rights and duties under the Policy and Class Policies and requests the Court to declare the aforementioned conduct of Defendant unlawful and in material breach of the Policy and Class Policies so that future controversies may be avoided.

70.     Pursuant to a declaration of the parties' respective rights and duties under the Policy and Class Policies, Plaintiff further seeks an injunction enjoining Defendant (1) from continuing to engage in conduct in breach of the Policy and Class Policies; and (2) ordering Defendant to comply with the terms of the Policy and Class Policies including payment of all amounts due.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, requests relief and judgment against Defendant as follows:

(a)     That the Court enter an order certifying the class, appointing Plaintiff as a representative of the class, appointing Plaintiff's counsel as class counsel, and directing that reasonable notice of this action, as provided by Federal Rule of Civil Procedure 23(c)(2), be given to the class;

(b)     For a judgment against Defendant for the causes of action alleged against it;

(c)     For compensatory damages in an amount to be proven at trial;

(d)     For a declaration that Defendant's conduct as alleged herein is unlawful and in

material breach of the Policy and Class Policies;

(e)     For appropriate injunctive relief, enjoining Defendant from continuing to engage in

conduct related to the breach of the Policy and Class Policies;

(f)     For pre-judgment and post-judgment interest at the maximum rate permitted by

law;

(g)     For Plaintiff's attorney's fees;

(h)     For Plaintiff's costs incurred; and

(i)     For such other relief in law or equity as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

April 23, 2020                          Respectfully submitted,

                                        **MILLER SCHIRGER, LLC**

                                        s/ Joseph M. Feierabend
                                        John J. Schirger
                                        Matthew W. Lytle
                                        Joseph M. Feierabend
                                        4520 Main Street, Suite 1570
                                        Kansas City, Missouri 64111
                                        816-561-6500
                                        816-561-6501 (f)
                                        jschirger@millerschirger.com
                                        mlytle@millerschirger.com
                                        jfeierabend@millerschirger.com

                                        - And -

Norm Siegel
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
816-714-7100
816-714-7101 (f)
siegel@stuevesiegel.com l

*Attorneys for Plaintiff Ann C. Hoak*